929 A.2d 599 (2006)
395 N.J. Super. 422
Assemblyman Reed GUSCIORA, Stephanie Harris, New Jersey Coalition for Peace Action and New Jersey Peace Action, Plaintiffs-Appellants,
v.
James E. McGREEVEY, Governor of the State of New Jersey (in his official capacity) and Peter C. Harvey, Attorney General of the State of New Jersey (in his official capacity), Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued January 25, 2006.
Remanded February 9, 2006.
Reargued May 24, 2006.
Decided June 29, 2006.
Penny M. Venetis, Newark, argued the cause for appellants (Rutgers Constitutional Litigation Clinic, attorneys; Ms. Venetis, on the brief).
Karen A. DuMars, Deputy Attorney General, argued the cause for respondents (Zulima V. Farber, Attorney General, attorney; Patrick DeAlmeida, Assistant Attorney General, of counsel; Donna Kelly, Assistant Attorney General, and Ms. DuMars, on the brief).
Before Judges STERN, FALL and PARKER.
The opinion of the court was delivered by
STERN, P.J.A.D.
Plaintiffs appeal from a judgment entered on January 27, 2005, denying injunctive relief and dismissing their complaint with prejudice. Plaintiffs sought an order enjoining the use of all Direct Recording Electronic (DRE) voting machines for the November 2004 election, requiring that all DRE voting machines be retrofitted to provide "a voter verified paper ballot after the November 2004 election" and requiring that all newly acquired DRE voting machines be equipped with "a voter verified paper ballot." The complaint was dismissed on the grounds that judicial involvement would violate the separation of powers doctrine because the judge found "no constitutional impediment to the election process."
In July 2005, the Legislature enacted, and the Governor signed, L. 2005, c. 137, now codified at N.J.S.A. 19:48-1 and N.J.S.A. 19:53A-3(i), which requires that *600 by January 1, 2008, all voting machines "shall produce an individual permanent paper record for each vote cast, which shall be made available for inspection and verification by the voter at the time the vote is cast." The legislation also requires that "the voter-verified paper record shall be the official tally" of the votes cast in an election.[1] As a result, we asked the parties to submit additional briefs on the question of whether the newly adopted statute renders the appeal moot. The issue was argued before us on January 25, 2006.
On February 9, 2006 we remanded the matter to the Law Division to consider whether the technology and resources were available to implement L. 2005, c. 137 for purposes of evaluating the issue of mootness, because that legislation provided for the type of paper ballot verification that plaintiffs sought in their complaint. Following the remand proceedings, the judge issued a thorough and expeditious "remand opinion" on April 19, 2006, which addressed the State's ability to meet the January 1, 2008 deadline. Plaintiffs now argue that (1) "this lawsuit is not moot," (2) "New Jersey's DREs should be de-commissioned immediately because they cannot produce a voter[-]verified paper ballot by the January 1, 2008 deadline mandated by the Legislature," (3) "this court should find that all voting in New Jersey should be done using optical scanners that count paper ballots," and (4) "it is imperative for this court to mandate a specific remedy to protect the franchise immediately because the State has made it clear that it will not fund the upgrade of the DREs to produce a voter[-]verified paper ballot."
Plaintiffs claim that "the evidence [at the remand hearing] has shown . . . that upgrading New Jersey's DREs to meet the [January 2008] mandate is technologically impossible" thereby requiring immediate decommission of the 8,178 SVS ADVANTAGE DREs, 160 SVS EDGE DREs, and the 361 ES & S iVOTRONIC machines now in use in the State.[2] They also argue that there is no realistic or reasonable basis for believing that the Legislature will allocate the funds necessary to complete the required retrofitting and to timely comply with the requirements of the new law, and urge us to either order the one-time purchase of a sufficient number of the AVANTE voting machines (at an approximate cost of $3,500-$3,600 for the "small face" model which has received State and federal certification), direct the use of paper or absentee ballots with optical scanning devices for all future elections *601 until there is full compliance with the statutory mandate, or otherwise (because the State insists the Judiciary is without authority to compel the expenditure of funds) enjoin elections with DREs until they comply with the technology required by the new Act. Plaintiffs contend that implementation is necessary to prevent an ongoing and immediate violation of constitutional rights.
The constitutional issue is premised upon the violation of N.J. Const., art. II, § 1, ¶ 3, which provides that "[e]very citizen of the United States, of the age of 18 years, who shall have been a resident of this State and of the county in which he claims his vote 30 days, next before the election, shall be entitled to vote for all officers that now or hereafter may be elective by the people, and upon all questions which may be submitted to a vote of the people. . . ." Plaintiffs assert that in the absence of a voting process which assures verification of the vote and the proper ability to count and recount the vote, there is a constitutional deprivation. However, plaintiffs agree that N.J.S.A. 19:48-1 and 19:53A-3(i), which require that all voting machines "shall produce an individual permanent paper record for each vote cast" by January 1, 2008, would on implementation, provide for the kind of voter-verified system that plaintiffs argue is required to repair the constitutional deficiencies. Therefore, every perceived constitutional deficiency in the electoral process would be remedied by a timely and successful implementation of the new law. As a result, the issues presented to us on this appeal are mooted by the new legislation.
We recognize, however, that the constitutional issue would remain if the legislation is not timely and successfully implemented, as the State and Attorney General have represented, in their brief and argument before us, it would be. We also note the fact-finding of the Law Division on our remand which expresses sincere concern regarding the State's ability to comply both technologically and with sufficient funding to implement the Act.
There is no substantial dispute with the Law Division's fact-finding that it will cost "approximately $1,000 per unit" to add a VVPAT to the EDGE machine, "an approximate cost of $2,000" to add a VVPAT to the ADVANTAGE,[3] and "approximately $1,800" "to upgrade an existing iVOTRONIC," if the existing machines do not have to be replaced. The judge also noted the testimony of plaintiffs' expert, Dr. Rebecca Mercuri, to the effect that "[w]hile the 2002 [federal certification] standards [which expire and are to be replaced by new standards, adopted in 2005, effective January 1, 2008] do not require a VVPAT, there are factors independent of the VVPAT that make it unlikely that the SVC [ADVANTAGE] machines will meet the 2002 standards by December 2007."[4] According to the judge:
The Fiscal Estimate prepared by the Office of Legislative Services ("OLS") estimates a cost to the State of approximately $21 million if federal funds are not available to reimburse the counties. As set forth in the Appellate Division *602 opinion, this figure is based on the need to retrofit approximately 10,030 voting machines with a VVPAT, replace 209 machines to satisfy the statute's requirements and 2,981 machines to be replaced by January 1, 2006 to comply with Help America Vote Act ("HAVA").
Based on the testimony presented during the remand proceeding, that monetary estimate may be overly optimistic. If the retrofit to the AVC ADVANTAGE is not certified and commercially available by January 1, 2008, then the State of New Jersey will be required to explore other alternatives. Clearly, the $1,000 upgrade of the 8,000 SVS AVC ADVANTAGE machines is the least costly. The other alternatives are far more expensive and will result in the expenditure of funds in excess of the projected $21 million.

[Emphasis added.]
With respect to retrofitting the AVC ADVANTAGE machine, which represents approximately eighty percent of the machines now used in New Jersey, the judge added:
Importantly, this machine has not received federal certification and the likelihood of this product being certified and commercially available by January 2008 is uncertain.
As noted heretofore, most of the State votes on the AVC ADVANTAGE manufactured by SVS. Given the uncertainty of the commercial availability of the ADVANTAGE-VVPAT by January 2008, it appears that OLS may have grossly underestimated the cost to purchase or retrofit the current machines utilized in the State of New Jersey.
Moreover, if there is a constitutional issue presented by the lack of implementation of the new law and an appropriate record can be made to support the constitutional claim of disenfranchisement, there would be no separation of power issue preventing the Law Division's consideration of the matter.
Accordingly, to preserve the constitutional issue and to provide for expeditious consideration of all issues with respect to the implementation of the new legislation and constitutional claim, and based on the fact-finding already made by the Law Division, we vacate the dismissal of plaintiffs' complaint and remand to the Law Division to conduct such case management conferences and hearings as are necessary over the next year and a half to monitor compliance with the new legislation, and, should the legislation not be implemented as assured by the State and Attorney General, for development of a record with respect to the constitutional claims and for consideration of any appropriate remedy with respect thereto. We find it unnecessary and inappropriate to comment further on the issues at this time.
The matter is remanded to the Law Division for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] Plaintiffs and amici curiae who filed briefs on the initial appeal assert that without the retrofit or verified paper ballot, voters cannot confirm their vote and that there is no means of confirming a vote in the event of a contest or recount. Plaintiffs, therefore, assert that without the voter-verified paper audit trail ("VVPAT"), voters are deprived of their constitutional rights under N.J. Const., art. II, § 1, ¶ 3 and statutory right to vote. We will assume, for present purposes, that L. 2005, c. 137 amends by implication other provisions of statutory requirements involving recounts and safeguards relating to the tabulation of ballots. Other amendments to the election laws were simultaneously adopted. See L. 2005, cc. 136-39, 145-53.
[2] The reference to the actual number of machines now in use varies, but the differences are insignificant. The trial judge found "[a]pproximately 200" SVS EDGE machines, being used "in one county," "approximately 8,000" SVS AVC ADVANTAGE machines in use in 13 counties, and "approximately 300 iVOTRONIC voting machines" being used in Sussex County. Warren County has also purchased 200 of the "full-face" model of the AVANTE VOTE-TRAKKER EVC308-FF machine for which federal certification has been sought.
[3] Sequoia's Vice President Thomas Cramer so testified. At another point, this figure was stated as $1,000; in either event, because there are now approximately 8,000 AVC ADVANTAGE machines now in use, we agree with the trial judge that the ability to retrofit that machine, and the cost thereof, is of critical concern.
[4] The judge noted that the EDGE VVPAT meets the 2002 standards and "received federal certification." An EDGE machine costs approximately $3,500 and, as previously noted, adding a VVPAT to the EDGE costs $1,000.